IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| EDDIE H. MYLES,<br><br>      Plaintiff,<br><br>v.<br><br>NEDRA CHANDLER,<br><br>      Defendant,<br><br>and<br><br>INTERNAL AFFAIRS OFFICER CHRISTOPHER THOMPSON,<br><br>      Defendant. | No. 15-cv-02855<br><br>Assigned to: Judge Philip G. Reinhard<br><br>Referred to: Judge Iain D. Johnston |

## FIRST AMENDED COMPLAINT

Plaintiff, Eddie H. Myles ("Plaintiff"), by and through his attorneys, for his First Amended Complaint alleges as follows:

## JURISDICTION AND VENUE

1. This action arises under and is brought pursuant to 42 U.S.C. § 1983 to remedy the deprivation, under color of state law, of rights guaranteed by the Eighth Amendment to the United States Constitution. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343.

2. This cause of action arose at Dixon Correctional Center ("Dixon"), 2600 N. Brinton Ave. Dixon, Illinois 61021 in Lee County. Accordingly, venue is appropriate in this Court.

## PARTIES

3. Plaintiff's name is Eddie H. Myles and his prisoner number is #A-71068. He is over sixty (60) years old.

4. Plaintiff is a current prisoner at Pickneyville Correctional Center ("Pickneyville") in Pinkneyville, Illinois.

5. Plaintiff was previously a prisoner at Dixon from May 2011 until he was transferred to Pickneyville in September 2014.

6. Defendant Nedra Chandler previously served as Warden of Dixon until approximately October 2014. She is being sued in her individual capacity official capacity to the extent the Plaintiff seeks declaratory relief.

7. Defendant Mr. Christopher Thompson was Head of Internal Affairs at Dixon in 2013 at the time of the incidents described below. He is being sued in his individual capacity and his official capacity to the extent the Plaintiff seeks declaratory relief.

## LITIGATION HISTORY

8. Plaintiff has not brought no other lawsuit dealing with the same facts alleged in this Amended Complaint in state or federal court.

9. Plaintiff has exhausted all administrative remedies and grievance proceedings to the extent applicable.

## FACTUAL BACKGROUND

10. In early 2013, Plaintiff was assigned to a cell with Milton Shepard #K-52138, another inmate who was substantially younger than Plaintiff.

11. At that time, Plaintiff had a bottom bunk permit and Shepard had to move to the top bunk as a result.

2

12. In 2012 and 2013, Plaintiff spoke with corrections officers and lieutenants about Shepard's aggressive statements to Plaintiff about having to move to the top bunk in the cell.

13. Shepard told Plaintiff let he was upset about having to move up top and give up the bottom bunk and threatened Plaintiff repeatedly. Plaintiff informed the corrections officers working in Unit 60 and was assured they would speak to them.

14. When Plaintiff was in his cell or the "Dayroom," Shepard acted aggressive towards Plaintiff and threatened him. Plaintiff did whatever he could trying to avoid a physical altercation whenever he was confronted by Shepard.

15. On January 28, 2013, Shepard attempted to claim that Plaintiff did not have a top bunk permit and told him to "move [his] 'ol ass on up."

16. Plaintiff told Shepard he would show him the permit and Shepard replied that he would "fuck him up" for forcing him out of the bottom bunk.

17. Plaintiff and Shepard then spoke with several correctional officers on the unit and they confirmed that Plaintiff had a permit. Nonetheless, Shepard continued to threaten Plaintiff, which several other inmates witnessed.

18. In January 2013, Shepard attacked Plaintiff for the first time. Later, Plaintiff and Shepard were taken to segregation and were charged with fighting.

19. On February 2 and 3, 2013, Internal Affairs Officers Thompson came to speak to Plaintiff about his displeasure with Shepard being in the general population, and not being happy with Plaintiff being in segregation.

20. While in segregation, Shepard continued to try and intimidate Plaintiff by yelling aggressive and threatening statements to Plaintiff and stating he would cause Plaintiff severe bodily harm.

21. Other corrections officers heard Shepard's threats and came to Plaintiff and told him to "watch himself" because Shepard told other individuals that when he got out of segregation he was going to "fuck [Plaintiff] up."

22. Once released from segregation, Shepard saw Plaintiff from a distance and began yelling threats to cause serious physical harm to Plaintiff in front of several corrections officers and inmates.

23. As a result of Shepard's continued threats to cause Plaintiff significant bodily harm, Plaintiff wrote a letter to Internal Affairs Officer Thompson in mid-March 2013.

24. Plaintiff also wrote a similar letter to Warden Nedra Chandler in mid-March 2013.

25. In the letters to Thompson and Chandler, Plaintiff detailed the physical abuse and threats from Shepard and stated that he feared for his safety. The letters also sought protection from Shepard. Both Chandler and Thompson were aware of Shepard's prior assault on Plaintiff in January 2013.

26. No action was taken by Thompson, Chandler, or any of their staff to separate Plaintiff from Shepard or to take any action to protect Plaintiff from Shepard.

27. On March 28, 2013, Unit #31 and Unit #58 were on the Dixon prison yard for recreational reasons. Plaintiff was in Unit 58 and Shepard was in Unit 31 on that date.

28. Plaintiff was sitting on the yard bench talking with inmates when Shepard invited Plaintiff to meet him over by the shack on the yard. Plaintiff attempted to ignore Shepard.

29. Shepard returned again to the bench where Plaintiff and the other inmate were sitting and insisted that Plaintiff get up and meet him by the shack to fight.

4

30. After Plaintiff ignored him, Shepard aggressively attacked Plaintiff and caused him serious bodily injury. Shepard hit Plaintiff about 15 to 20 times in his head and face as Plaintiff attempted to cover himself.

31. As Shepard was on top of Plaintiff beating him, the horn went off letting everyone know that yard was over.

32. No officers or Dixon staff provided protection to Plaintiff. The assault on Plaintiff was witnessed by numerous other inmates.

33. Plaintiff was later taken to the hospital as a result of the serious bodily harm he suffered and was given pain medication by the nurse. Dixon staff then took pictures of Plaintiff's injuries.

34. Plaintiff and Shepard were later placed in segregation.

35. In late March 2013, Internal Affairs Officer Thompson came to Plaintiff's cell and acknowledged that he had received the letter from Plaintiff and apologized for not taking action to prevent the assault by Shepard. Thompson also said that he discussed the assault with Warden Chandler.

36. Shepard was later transferred in April 2013.

37. In September 2014, Plaintiff was transferred to Pickneyville where he currently resides.

**COUNT I – 42. U.S.C. §1983 - FAILURE TO PROTECT AGAINST DEFENDANT THOMPSON**

38. Plaintiff incorporates the allegations above here.

39. There was a substantial risk of serious bodily harm to Plaintiff as a result of the threats and actions of Shepard.

CHICAGO/#2743934.2
DRAFT

40. Defendant Thompson was aware of the risk of harm that Shepard presented to Plaintiff.

41. Defendant Thompson was deliberately indifferent to that risk and took no actions to separated Plaintiff from Shepard or otherwise to protect him from the imminent threat of seriously bodily harm.

42. Plaintiff would not have suffered the assault by Shepard had Defendant Thompson not shown deliberate indifference to the risk of harm to Plaintiff and taken the reasonable measures to protect Plaintiff.

43. As a result of Defendant Thompson's failure to protect Plaintiff, Plaintiff suffered significant bodily harm and related emotional and mental damages.

### COUNT II – 42. U.S.C. §1983 - FAILURE TO PROTECT AGAINST DEFENDANT CHANDLER

44. Plaintiff incorporates the allegations above here.

45. There was a substantial risk of serious harm to Plaintiff as a result of the threats and actions of Shepard.

46. Defendant Chandler was aware of the risk of harm that Shepard presented to Plaintiff as a result of the letter she received from Plaintiff.

47. Defendant Chandler was deliberately indifferent to that risk.

48. Plaintiff would not have suffered the assault by Shepard had Defendant Warden not shown deliberate indifference to the risk of harm to Plaintiff and taken the reasonable measures to protect Plaintiff.

49. As a result of Defendant Chandler's failure to protect Plaintiff, Plaintiff suffered significant bodily harm and related emotional and mental damages.

CHICAGO/#2743934.2
DRAFT

## DEMAND FOR JURY TRIAL

50. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to: 1) enter judgment in its favor on all counts; 2) award Plaintiff compensatory and punitive damages in an amount to be proved at trial and Plaintiff's attorney's fees and costs; and 3) declare that Defendants' actions were a violation of the law and Plaintiff's constitutional rights.

Respectfully submitted,

EDDIE H. MYLES

By:   s/ Patrick W. Spangler
      One of His Attorneys

Patrick W. Spangler, Bar No. 6290810
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T: +1 (312) 609 7500

Dated: August 28, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing FIRST AMENDED COMPLAINT to the following attorneys of record on August 28, 2015 via:

**CM/ECF CASE FILING**
Illinois Department of Corrections
100 West Randolph, Suite 4-200
Chicago, Illinois 60601

**U.S. MAIL**
Becky Williams
Dixon Correction Center – 1, 3
2600 North Brinton Avenue
Dixon, Illinois 61021
becky.j.williams@doc.illinois.gov

                        s/ Patrick W. Spangler
                            One of His Attorneys