IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| EDDIE H. MYLES,<br><br>      Plaintiff,<br><br>v.<br><br>NEDRA CHANDLER,<br><br>      Defendant,<br><br>and<br><br>INTERNAL AFFAIRS OFFICER CHRISTOPHER THOMPSON,<br><br>      Defendant. | No. 15-cv-02855<br><br>Assigned to: Judge Philip G. Reinhard<br><br>Magistrate: Judge Iain D. Johnston |

**LOCAL RULE 56.1(b)(3)(C) STATEMENT OF ADDITIONAL, DISPUTED FACTS**

NOW COMES Plaintiff Eddie Myles, by and through his attorneys, Vedder Price P.C., pursuant to L.R. 56.1(b)(3)(C) and in support of his Response to Defendants' Motion for Summary Judgment, hereby states the following facts which preclude Summary Judgment:

    1.    After Myles was placed in a cell with Shepard, they first had an altercation about Myles' bottom bunk permit. (Myles Dep. 26:3-18).[1]

    2.    Chandler would have been aware of the first incident between Myles and Shepard. (Chandler Dep. 24:24-25:3). Chandler had responsibility for inmate violence issues. (Chandler Dep. 16:10-13.)

    3.    Thompson would have been aware of the first incident with Shepard. (Myles Dep. 56:4-10).

    4.    Additionally, after their first incident, Thompson apologized to Myles for not putting both him and Shepard into Segregation. (Myles Dep. 32:3-20).

---

[1] All deposition transcript references and exhibits are located in the attached Appendix.

5. After the first incident, Myles was threatened by his former cellmate, Shepard. (See Tab 5, Myles Dep. 15:19-16:9).

6. Shepard testified that, after the first incident, he was "upset" and "mad at Plaintiff and "want[ed] to hit him." (Shepard Dep. Tr. 55:4-11.)

7. Myles sent two letters regarding the threats by Shepard: one to Chandler and one to Thompson. (Myles Dep. Tr. 69:24-70:14, Tab 5).

8. The letters Myles mailed to Chandler and Thompson were identical. (Myles Dep. 18:5-7).

9. The letter describes that Myles is not trying to get "shot" or "hurt" when he and Shepard are out on the yard together, that Shepard is "talking crazy," and how he will try to avoid confrontation but wanted to warn them before anything happened. (See Tab 5).

10. Myles personally placed his letter to Warden Chandler in her box. (Myles Dep. 17:16-19).

11. Chandler does not recall receiving Myles' letter. (Chandler Dep. 26:14-16).

12. Thompson does not deny receiving the letter. (Thompson Dep. Tr. 40:3-6). First, Thompson testifies to not having received the letter. (Thompson 42:25-44:17). Then, Thompson testified he did receive the letter, and simply does not remember when. (Thompson Dep. Tr. 59:7-18). Thompson produced the March 3, 2013 letter in discovery and attached it to his motion. (Defendants' Statement of Undisputed Material Facts ("SOF"), Doc. No. 42, Exhibit 5).

13. When an inmate writes Internal Affairs regarding a threat, an inquiry is usually conducted. (Chandler Dep. 29:5-24).

14. Thompson would be involved in those inquiries. (Thompson Dep. 7:20-25; 11:6-14).

15. Myles suffered injuries to his head, face, and eyes as a result of the second incident; specifically a swollen left eye, a bump on his forehead, and abrasions. (Myles Dep. 74: 2-20, see also Tab 6).

16. Myles' vision was impacted by the second incident. (Myles Dep. 74:11-23).

17. After the March 28, 2013 incident, Thompson had a direct conversation with Myles about the letter and his failure to take action, which Thompson now does not recall. (Thompson Dep. 48:4-25). During that conversation, Thompson told Myles that he apologized for not honoring the letter that he received from Myles, not sending anyone to talk to Shepard to do a thorough investigation, and noted that maybe if he, Thompson, had done something before now, the altercation would not have happened. (Myles Dep. 36:3-37:4, 71:19-72:5).

18. Thompson told Myles that he had not dealt with the letter because something urgent came up that required his attention. (Myles Dep. 71:19-72:5).

19.     One option for Thompson or Chandler when an inmate puts internal affairs on notice of a threat by another inmate is to transfer one of the inmates or put them into a different area of the facility or in segregation.  (Chandler Dep. 19:9-20:21.)  The Dixon facility transferred inmates approximately three times a month when an inmate raised a violence issue with another inmate.  (Chandler Dep. 23:12-25.)  But it is undisputed that Myles was not transferred after the March 3, 2013 letter.

20.     After receiving the letter and after apologizing to Plaintiff, Thompson ultimately transferred Shepard to another facility and stopped Plaintiff's disciplinary transfer. (Myles Dep. 52:14-20).

                                      Respectfully submitted,

                                      EDDIE MYLES


                                  By:   s/ Patrick W. Spangler
                                           One of His Attorneys

Patrick W. Spangler, Bar No. 6290810
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T:  +1 (312) 609 7500

Dated:  October 31, 2016

## **CERTIFICATE OF SERVICE**

I, Patrick W. Spangler, an attorney, state that I caused a copy of the foregoing RESPONSE TO STATEMENT OF FACT to be served on this 31st day of October, 2016 upon:

Illinois Department of Corrections
100 West Randolph, Suite 4-200
Chicago, Illinois 60601
**VIA U.S. MAIL**

Jennifer M. Lutzke, Bar No. 6299388
Office of the Illinois Attorney General
100 W. Randolph, 13th Floor
Chicago, Illinois 60601
**VIA EMAIL AND U.S. MAIL**

                                             s/ Patrick W. Spangler
                                             Patrick W. Spangler