# TAB 3

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2           FOR THE NORTHERN DISTRICT OF ILLINOIS
 3                      EASTERN DIVISION
 4
 5   EDDIE H. MYLES,                )
 6             Plaintiff,           )
 7        -vs-                      )  Case No.
 8   NEDRA CHANDLER and INTERNAL    )  15 C 2855
 9   AFFAIRS OFFICER CHRISTOPHER    )
10   THOMPSON,                      )
11             Defendants.          )
12
13        The videoconference deposition of MILTON SHEPARD,
14   called for examination, taken pursuant to the Federal
15   Rules of Civil Procedure of the United States
16   District Courts pertaining to the taking of
17   depositions, taken before V. LINDA BOESCH, a Notary
18   Public within and for the County of DuPage, State of
19   Illinois, and a Certified Shorthand Reporter, CSR No.
20   084-003108, of said state, at Suite 400, 100 West
21   Randolph Street, Chicago, Illinois, on August 18,
22   2016, at 1:00 p.m.
23
24
```

Page 2

```
 1   PRESENT:
 2        VEDDER PRICE, P.C.,
 3        (222 North LaSalle Street, Suite 2600,
 4        Chicago, Illinois 60601,
 5        312-609-7500), by:
 6        MR. PATRICK W. SPANGLER,
 7        pspangler@vedderprice.com,
 8             appeared on behalf of the Plaintiff;
 9
10        OFFICE OF THE ATTORNEY GENERAL,
11        STATE OF ILLINOIS,
12        (100 West Randolph Street, Suite 1300,
13        Chicago, Illinois 60601,
14        312-814-3000), by:
15        MS. JENNIFER M. LUTZKE,
16        jlutzke@atg.state.il.us,
17             appeared on behalf of the Defendants.
18
19
20
21
22
23   REPORTED BY:  V. LINDA BOESCH, CSR No. 084-003108.
24
```

Page 3

```
 1           (WHEREUPON, the witness was duly
 2            sworn via videoconference.)
 3             MILTON SHEPARD,
 4   called as a witness herein, having been first duly
 5   sworn, was examined via videoconference and testified
 6   as follows:
 7             EXAMINATION
 8   BY MS. LUTZKE:
 9       Q.   Can you state and spell your name for the
10   record?
11       A.   My name is Milton Shepard, M-I-L-T-O-N,
12   S-H-E-P-A-R-D.
13       Q.   And what's your inmate ID number?
14       A.   K-52138.
15       Q.   Mr. Shepard, my name is Jennifer Lutzke.
16   I'm an attorney for Nedra Chandler and Christopher
17   Thompson in a case that's been brought in the
18   Northern District of Illinois by Eddie Myles.
19            Have you ever had your deposition taken
20   before?
21       A.   No, ma'am.
22       Q.   Okay.  I'm going to go over just a few
23   ground rules for you.  Since you're appearing by
24   video, if at any point you can't hear me or you don't
```

Page 4

```
 1   understand a question that I ask, just let me know
 2   and I'll rephrase it, okay?
 3       A.   Yes, ma'am.
 4       Q.   Okay.  And you have to answer verbally
 5   because the court reporter is taking down the
 6   questions that I ask and the answers that you give
 7   and she can't take down nonverbal answers, like
 8   shaking your head or saying uh-huh or uh-uh.
 9            Do you understand?
10       A.   Yes, ma'am.
11       Q.   If you answer a question that I ask, I'm
12   going to assume that you understood it, okay?
13       A.   Yes, ma'am.
14       Q.   Is there anything that would impair your
15   ability to give truthful and accurate testimony
16   today?
17       A.   No, ma'am.
18       Q.   So where are you currently incarcerated?
19       A.   At Robinson Correctional Center.
20       Q.   Have you previously been incarcerated at
21   Dixon Correctional Center within the Illinois
22   Department of Corrections?
23       A.   Yes, ma'am.
24       Q.   And when were you incarcerated at Dixon?
```



```
                                                              Page 53
 1       MS. LUTZKE: I'm just going to object to
 2   foundation.
 3   BY MR. SPANGLER:
 4       Q.   Okay. Could you see them when the
 5   altercation occurred?
 6       A.   Yes. I saw one of them.
 7       Q.   Which one?
 8       A.   The younger one that was in front of
 9   Building 29.
10       Q.   So where the picnic table is, where is
11   Building 29 in relation to that?
12       A.   This is the table (indicating). 29 is to
13   my left, behind me to my left.
14       Q.   Okay. And what did the --
15       A.   The officer --
16       Q.   Oh, I'm sorry. Go ahead.
17       A.   The officer is to my left. But the fact
18   that -- the people was here and the end of the
19   building is almost right behind me, but a little to
20   my left, the end of the Building 29.
21            The front -- and the building is a
22   rectangle and the front door is in the middle of the
23   building and he's standing in front of the front
24   door --
```

```
                                                              Page 54
 1       Q.   Okay.
 2       A.   -- talking to another inmate.
 3       Q.   Okay. And what did he do after the
 4   altercation occurred?
 5       A.   He didn't see it.
 6       Q.   Okay. And why do you say he didn't see
 7   it?
 8       A.   Because he didn't -- he was talking -- at
 9   that time he was talking to another inmate.
10       Q.   Okay.
11       A.   He was distracted.
12       Q.   Right. Okay. And you didn't -- when --
13   if I heard your testimony right, Mr. Myles attempted
14   to speak to you. You said some words to him.
15            Is it fair to say you didn't alert any
16   correctional officer as to any issue with Mr. Myles?
17       A.   The second time?
18       Q.   Yeah.
19       A.   Yeah, they knew. We got into a fight.
20   They knew.
21       Q.   Yeah. I mean --
22       A.   Yeah, they knew.
23       Q.   Before is what I'm saying. Before the
24   incident with you and Mr. Myles, when you're on the
```

```
                                                              Page 55
 1   yard and you're talking to each other, you didn't go
 2   and tell an officer, correct?
 3       A.   No.
 4       Q.   Okay. After the first incident that
 5   occurred in the day room, is it fair to say you were
 6   upset with Mr. Myles about that incident?
 7       A.   Of course I was.
 8       Q.   Okay. Were you mad at him?
 9       A.   Of course I was.
10       Q.   Okay. Did you want to hit him?
11       A.   Yes.
12       Q.   Okay. And when you left -- I want to ask
13   you a few questions about when you left Dixon.
14            Tell me again, why did you leave Dixon?
15       A.   Because, well, strangely, they said I got
16   into a second altercation with Inmate Eddie Myles.
17       Q.   So they moved you? Did you want --
18       A.   Yes.
19       Q.   -- to move?
20            Did you want to move?
21       A.   No.
22       Q.   Okay. Do you know what happened with
23   Mr. Myles?
24       A.   No. Yeah, yeah. He stayed in Dixon
```

```
                                                              Page 56
 1   under mental status which is a strange -- which is
 2   strange to me. He stayed in the mental status. They
 3   kept me on -- they sent me to Matteson.
 4       MR. SPANGLER: Okay. All right. That's it for
 5   me.
 6       MS. LUTZKE: I don't have any further
 7   questions.
 8            So, Mr. Shepard, you can review the
 9   deposition transcript which would be the questions
10   that you were asked and the answers that you gave.
11   You can't actually keep the copy that's provided to
12   you, but you're given a sheet and you can change, you
13   know, misspelling or typographical errors.
14            So the choice is yours. You can either
15   review the transcript or you can waive that right.
16       THE WITNESS: I'll waive my rights. I don't
17   need it.
18       MS. LUTZKE: Okay. Thank you, Mr. Shepard.
19       THE WITNESS: Oh, excuse me, excuse me, excuse
20   me. I get a copy of that?
21       MS. LUTZKE: I can send you a copy after we get
22   a copy.
23       THE WITNESS: Can you please do that?
24       MS. LUTZKE: Sure. No problem.
```



ESQUIRE SOLUTIONS